I hope you can see this. This is number 316-0102, and I'm here to ask for the support of Ms. Michelle Cioni, a panelist by way of name, for the state and state's dam and water company, Appalooma Eric Dubler, and Joseph Navarro, on behalf of the federal government. I'm so sorry. At all, Appalooma's right here. Good morning, Your Honors. Good morning. May it please the Court, Your Honor, my name is William Mee. I'm counsel for the plaintiffs, John Chirotto, Dennis Corbin, and Michelle Cioni. My clients are owners of what used to be lakefront property in Dayton Estates, which is a residential subdivision for development in Dayton Township. They're no longer owners of lakefront property because the lake is no longer there. They don't have the use or enjoyment of the lake their homes once fronted. They've lost the value of their lakefront property. The recreational lake that existed in this development was used for boating and fishing by our clients. It was located between two subdivisions, Dayton Estates and Dayton Estates West, on a parcel of land that was owned by the Dayton Estates Dam and Water Company. Our position is that the Dayton Estates Dam and Water Company is a homeowners association administering a common interest community as that's defined in our statutes. There are a lot of different references to common interest communities in our statutes. The most frequently referenced is the definition contained in the Code of Civil Procedure. And the reason for that is because in 1972, condominium associations, which were created by the 1963 Condominium Act, sought to be allowed to collect their assessments from their delinquent owners by way of the Forcible Entry Detainer Act. Then at that time, in 72, the Civil Procedure Act was revised to allow them to do so. That later became applicable to common interest community associations. That was in the 1984 revision to the Code of Civil Procedure. So the 84 revision of the Code of Civil Procedure was important because it recognized these kinds of organizations that had long existed, but had never had any statutory definition applied to them. So the Code of Civil Procedure first used that definition when describing these sorts of organizations. It's important that the court determined that this is a common interest community. And that's because there's a special legal duty, and special legal duties that go along with that characterization. And specifically, the directors of such an organization have a fiduciary duty to the members of the association. And that includes, in this particular case, the duty to maintain, repair, and then indeed replace the dam that once existed in this development. Do they have city water now? I believe there are wells, Your Honor. I believe there are wells. I don't want to represent that to be the case in all cases, but I believe in some cases there are. There's also a contractual relationship between the association and its members contained in the written instruments, the declarations, the bylaws of the association, and the Articles of Incorporation. This contract's supported by mutual consideration in the form of obligations on both the property owners and the association. They're contained in the governing documents. There are a long list of obligations that are required by the corporation or the association, most prominent of which in the Articles of Incorporation is the maintenance of the dam. Essentially, the main purpose of this organization was to maintain that dam to create the lake. When is the water supply issue gone? True. That's the only thing left. That's the only other thing, right. And as I understand it, no water system, to address the court's question, no water system was ever created despite the fact that that was one of the things that was intended to be done. The other obligations are maintenance, repair of the dam, payment for insurance for the lake, property taxes, and legal ownership of the lake parcel. The obligation to maintain the dam is mandatory here, and it's very unique because the Articles of Incorporation have a provision in them that says that without the consent of the LaSalle County Board, this organization, this corporation cannot relieve itself of the obligation to maintain this dam. In 2007, this dam went away. It washed away in a big, big rainstorm. Our position is that there's an obligation to restore it to its condition in a manner that will restore the lake to our clients. The defendants would like, despite all the duties that are imposed on the association here, the defendants would like the court to accept the fact that there's no remedy for our clients. We had a lake when we purchased our property. We don't have a lake anymore. That's unfortunate. But in this case, that position and the court's ruling as to it are erroneous. The counts one and two of our client's complaint sought declaratory relief. Specifically, we wanted the court to determine that this was a common interest community association. Second, we wanted the court to determine that, as such, there are a list of duties, most prominent of which is the maintenance of this dam. And we wanted the court also to determine that there is a duty to restore it to its former condition. Count five of the complaint tied into that in that it was a request for an injunction, a mandatory injunction requiring the restoration of the dam. Count six was a breach of fiduciary claim against individual board members. We believe that breach to be ongoing as we stand here today until the dam is restored. And count seven was a contract claim. Back to the references to the governing documents, mutual duties of governance and payment of assessments between the association members, and that was dismissed by the court for a failure to state a cause of action. All of these rulings were either summary judgment or dismissal, and under de novo standard they should all be reversed. Concentrating on the issue of our assertion that Dayton Estates is a homeowner association administering a common interest community. Again, it's defined in several statutes. And interestingly, right now before the General Assembly is a bill pending to adopt a definition of a common interest community as contained in the recently adopted Common Interest Community Association Act. In 2010, the General Assembly enacted the Common Interest Community Association Act, which governs these in a much more comprehensive manner than had ever been done before in the past because they were really governed mostly by common law. The condominiums were different because they were created by statute. In this case, it's quite the reverse. The statute was created to describe things that already existed, and that's why we first saw it in the Forcible Entry and Detainer Act in the Code of Civil Procedure. But there is now a definition that has been codified in the Common Interest Community Act. It's the same as the one contained in the Code of Civil Procedure. That's an aside. It may or may not get adopted, but the definition is very much the same. That definition exists in the Common Interest Community Association Act. Also, there are lots of cases that are reported before the creation of this particular association that identify as litigants homeowners associations. This was not a creation that came along with the 1984 amendments to the Code of Civil Procedure. They existed for a long time, and they were being recognized by the statutory enactment of the definition. The reason why it's important, again, is because the directors of a common interest community association owe a duty of care as directors. It's a fiduciary duty. And a case called Walensky v. Katteson says that this was a condominium case, but that case said that directors in a condominium have an obligation to strictly adhere to the provisions of their governing instruments, and that failure to do so is a breach of fiduciary duty. Moreover, that can result not only in a liability to the association, but individual liability to the directors who don't follow their fiduciary duty. Council has raised, and rightly so, that that strict adherence rule as to condominiums has been diluted somewhat. They raised the Goldberg case, Goldberg v. Astor Plaza, and I happen to have a great familiarity with that case because I was on the council of record for that for a couple of years before the trial took place. The principal there in Goldberg cites a case called, Goldberg cites Carney v. Donnelly, another condominium case, the proposition being that a court will not disturb the judgment of a board of a condominium provided they've, in interpreting their own governing instruments, provided they've done so in a reasonable manner. I'm going to suggest in a moment that they couldn't possibly have done that in this case, couldn't possibly be reasonable under the written declaration and the written documents that we have here. So the business judgment rule is the thing that has diluted the strict adherence as it relates to condominiums. Now, as I stand here before you today, I believe that the state of the law as it relates to the common interest community associations is that strict adherence is still required. Now, business judgment rule could be raised, but again, that is designed to protect directors from honest mistakes of judgment. One of the requirements is to become informed of their duties. One of the requirements is to interpret their documents in a reasonable fashion. Here, an essential element, in fact, the essential element of the corporation's governing documents is that it has to maintain the dam. And we also argue that that means it has to repair it when it's no longer serving its function and replace it. Our position is that it could not possibly be a reasonable reading of the governing instruments to say that there's no obligation to do that or to relieve the association of that obligation. In fact, the Articles of Incorporation say that can't be done without the approval of the South County Board. In any case, whether that's a reasonable exercise of the director's judgment and whether that's a reasonable interpretation of the governing documents is a question of fact for a jury to decide in this case. And that is what we ask the court to allow us to do here. If there's clear directives, if there are clear directives in the governing documents that say this is what our responsibility is, to say that we can't, that we don't have that obligation, our position is that can't be a reasonable interpretation. And that's what's required in order to invoke the business judgment rule as a defense. So in this case, we think that either they failed to become informed of what their duties are or that they have been informed that they've deliberately chosen to act in a matter that's diametrically opposed to the requirements of the governing documents. A piece of support for that in this case is that there was a legal opinion. And again, looking at that Kearney v. Donnelly case, and I'll give you the site for that, it is 261 Illap 3rd, 1002. There has to be a – if they're interpreting their governing documents reasonably, they can be protected from liability for a breach of fiduciary duty. One of the ways they can do that is to obtain a legal opinion that says we think you have the authority to take the action you're taking. In this case, we have the opposite. We have a legal opinion rendered on behalf of the association by Mr. Martin, who is a partner of one of the now associations counsel, that said, I believe that this association has the right and the duty to do these repairs. And this was done in connection with an SBA loan several years ago where funding was being sought for engineering to evaluate what was going to have to happen to get this thing replaced. And so there's a legal opinion that says, I think, that there's an obligation to do that. So not only are the documents clear about what the obligations are, the legal opinion says, yes, that's the obligation of this association. We think they've acted in a manner that's consistent with both. And that is where individual board members become exposed to liability for this kind of conduct. To the contractual relationship. Thank you. This is a contract because the subdivisions are governed by covenants that run with the land. Every single homeowner knows when they take title what the conditions are that affect the property they're taking. The declarations were recorded in this case identify that there's going to be a corporation created for the purposes of maintaining a dam. And it also sets forth, the articles in corporation set forth what conditions have to be met in order for anybody to be relieved of that obligation. When I mean anybody, I mean the association, the corporation. Everyone knows that when they take title to their property. We take the position that failing to have this lake created by the dam, the purpose of which is to create the lake, is an ongoing breach of the contractual obligation of the association to the homeowners of the association, in particular ours, because of the lakefront nature of their property. It doesn't any longer exist. We've got damages as a result. Now, the consideration for this relationship is that our clients pay assessments and always have. The association has the authority to collect assessments for the purposes set forth in the articles of incorporation. And it also has the ability to specially assess for things like repairs or damages. We know this to be the case because the association has specially assessed for legal fees in this case, which are not anywhere listed in the governing documents, but are under the Not-for-Profit Act permitted to be assessed for indemnification purposes in this type of case. But clearly they have the ability to do it as it relates to the money for dam repair. They have done so. They've also enforced the covenants. And the association members have paid assessments. They've sued to enforce the covenants. So there's no question that they can and have done their job as a homeowners association. And because of that, because of the failure to do the one act that really is the essence of this organization, the reason for it being their ongoing breach of their contractual duty to the homeowners. We'd like the court to reverse the dismissal of that. And I think it's thoroughly fled in our complaint all of the different duties and the failure to abide by those duties. We've asked this court to vacate and reverse the orders of summary judgment and vacate the order of dismissal and allow us to proceed in this matter to trial in the local court. If the court has any questions, we'd be pleased to answer them. Thank you very much, Mr. Dablor.  Mr. Dablor, you're up first. Good morning, Your Honors. My name is Eric Dablor. I'm the attorney for the defendant, Dapolee, Dayton Estates Dam and Water Company. Mr. Ney's arguments are based mostly on the assumption that in fact there is a homeowners association operating a common interest community. In fact, it doesn't exist. The subdivisions we're talking about here were created by William Shearer in 1975. He recorded the subdivision documents in May. Approximately two weeks later, he then chartered the corporation, and I'm going to call it the company. It's a matter of brevity. These subdivisions consisted of about 28 lot owners. A few of them were on each side of this ravine where the pond would be formed by the lake. Under the covenants, the subdivider had the power and the right to flood the ravine to the 165-foot contour line. Out of the 28 owners, only about eight actually front upon the pond. I believe I have a typo in my brief that said six, but really it's eight. The company was conveyed land around the creek as it went in a north-south direction down toward the dam. It also was conveyed property on which the dam is located. There is no common property owned by the lake owners or the lot owners and by the corporation. The company has two theories under which it is being attacked as having an obligation. Either it is contract that the lot owners consume to rebuild the dam, or that the company is a whores association operating a common interest community. The plaintiffs base this upon four documents. The first three are recorded. Those are the covenants for each of the two subdivisions, the articles of incorporation of the company, and the company bylaws, which are not recorded. In his brief, the plaintiffs have made certain statements about the contents of these documents, which I believe is inaccurate. Instead of going through what the contents of the documents are, I think it would be clearer if I said what they don't say. They do not mention anywhere in them that a homeowner's association is being established or that there is any power by a homeowner's association to manage and enforce the covenants. No mention is made in these documents that the company has any power to enforce the covenants. No mention is made of creating a common interest community. The company has no power to own or control the pond. No mention is made of the lot owners having any powers to sue the company to maintain the existence of the dam, and neither the covenants or the articles of incorporation refer to each other or make any reference that they should be read together as a single document. With regard especially the obligation to retain the dam, reference was made to the articles of incorporation that could only be amended with consent of the county board. That is in paragraph nine of the articles of incorporation, which refers specifically to carrying liability insurance for the operation of the dam. The bylaws of the company were never recorded, and they are strictly operational, like giving directions for having the annual meeting of the members to elect directors. The covenants grant no enforcement power to anyone except the developer individually. No successor to the developer was named in the covenants. In 1992, someone claiming to be a successor, filed and recorded an appointment of successor developer, naming the board of directors of the company. Not the company, but the board of directors as a committee. The company has never had any enforcement powers whatsoever in any of these requirements in the covenants. The eighth amendment complaint in count seven was a complaint for breach of contract. Before the court can interpret a contract, the first must be a contract. They claimed in paragraph 112 of count seven that the four documents together constitute a bi-mutant contract. However, the company was created after the subdivisions were. There has never been ratification by the company that would take on the obligation of enforcing these covenants. A company generally does not subject itself to pre-existing obligations unless this ratification takes place. Furthermore, for these documents to form a contract, they must integrate. And they are not signed by the same people. They do not refer to each other. They do not talk about the same subject matter. In pages 30 and 31 of my brief, I stated that instruments to be incorporated must do so by direct and with an intent to integrate and incorporate into each other. That does not happen in these documents. Furthermore, an interpretation of covenants is like a contract. They are to be interpreted on their face, and unless there are ambiguities to be given, they're clear, expressed provisions. They have never claimed any ambiguities to exist in either the covenants or in the Articles of Incorporation. Therefore, there is no contract to interpret. With regard to Amended Complaint 9, Count 1, this asks for a declaratory judgment that the company be declared a homeowners association operating a CIC, or a common interest community. The strategy, as alluded to by Mr. Nee, is that if it's declared that, then the directors will have this nondiscretionary obligation to build the dam under Walensky v. Catteson. But before that can happen, it must be an HOA operating a common interest community. The documents do not integrate, as I said previously, under the arguments with regard to contract. There is no mention of the existence of a homeowners association anywhere in these documents. In the 3rd District's own case of Kessler v. Pell-9, it said that covenants must be interpreted as they appear on their face in the surrounding circumstances. When these covenants were passed in 1975, the 1984 Act defining a common interest community did not exist and would not exist for 4 million years. The CIC requirements are set forth in page 41 of my brief. There is no commonly owned property between the parties which the members are obliged to pay an expense for. There is only the dam. The dam property belongs only to the dam, only to the company. What does the membership in the company give you? Each lot owner is an automatic member. That's correct. What interest in the company does that give you? As a member of a non-for-profit corporation, it gives them no rights to the assets at all. This is a non-for-profit. They have an obligation to pay the dues, to pay the expenses, and that is all. Under a non-for-profit, they have no right to the property of the corporation. As for the opinion of Paul Martin that was referred to, this was a form he filled out. The form, printed form, pre-printed form, called it an association. He was simply asked to decide whether the company could enter into an SBA loan. He was not specifically asked at any time to determine its legal status as a homeowners association or as some other type of entity. He simply filled out the form as he was given it, and that does not form the basis of creating a homeowners association. That would essentially modify the covenants. It would be an amendment to the covenants without the permission or the knowledge of the lot owners. There is no case in Illinois that I am aware of that these collateral events alluded to by the appellant can amend the real estate covenants of a subdivision, and there is no case that I am aware of of judicially imposing the status of a homeowners association upon a subdivision when it doesn't say anything like that in the covenants themselves. And this is exactly what the appellant is requesting. Thank you, Your Honor. Good morning. May it please the court, counsel. I'm Darrell Singler. I represent the individual defendants in this case, and I am on short time. First, I think easy to deal with. Four of the defendants in this case, Poland, Nevin, Merite, and Wes, were elected as directors on the day after this lawsuit was filed. They were included in count six over two months after the trial court had entered a preliminary injunction order stating that no action could be taken by the company to change the name. There's no action or inaction complained of as to those four people anywhere. They were sued according to the plaintiffs because, and I quote, they were board members and the board has not acted. Under any circumstances or perspective, I submit that they should have never been sued and the trial court found accordingly. I would like to deviate because of the shortness of time, Your Honor. You asked the question, Justice O'Brien, about what rights these people have as members. That's a very good question, and it goes to the issue of what is there to have in this corporation. A member has one thing, well, two things, an obligation under the bylaws to pay assessments, but they have the right to vote. Every member has the right to vote on all matters submitted to them. That's where the power of membership comes in. I believe that that's meaningful, and I will tie that in in a moment. There is no law in support of the proposition that, to my knowledge, that a stated corporate purpose in articles of incorporation creates an absolute fiduciary duty on the part of the directors to absolutely carry out exactly what is stated in that purpose. No one, I think, can cite any authority to that effect. Mr. Meehan's argument for the plaintiffs ignores, I think prominently, all of the actions of the membership and the board of directors after the dam breach. Many things happened. They are detailed in repeat fashion in the record. They are at page three through six of our brief, and they're in the Poland-Levin brief, as well as Mr. Debra's. There is a chronology of events that is active and purposeful, which leads to the other matter that Mr. Meehan ignores, and that is that the repair or replacement of the dam could not have been done as of the date of the filing of this lawsuit. That evidence comes from the plaintiffs in their depositions, because Mr. Chiarotto and Mr. Corbin were both officers in the board. Mr. Chiarotto was the president of the board during most of the operative times that were involved in this case. He stopped being on the board, filed a lawsuit the day before these four folks were elected, but many things happened before then. As of the moment in time of this lawsuit being filed, there was not sufficient information as to engineering, cost, classification required by the government. All of those things were still up in the air. The plaintiffs readily admit that at that point it could not have gone through, I believe I am quoting someone, in their deposition testimony. I am truly deviating from all the things that I wanted to say, but I'm trying to short-circuit. Your Honor, the plaintiffs in this case, I think this is the essence of it. Also, go behind it and look at what is being asked judicially here. These plaintiffs are asking that the trial court in this court do all of the things that could not have been done as of the date of the filing of this lawsuit that the plaintiffs described. The trial court, Appendix A-12 of the appellate's brief, in its order details those things. The plaintiff's complaint would require the court to decide that the dam must be repaired and replaced, determine the cost of the repair and replacement, order the membership and board of directors to approve the repair based on those costs, order the Department of Natural Resources to issue a formal decision as to classification, and order all lot owners and members of the company to pay whatever that cost is on a prorated basis. Instead, the court said, the court can't do that. I concur. The court finishes the order by saying, as this court has repeatedly stated, plaintiff's only relief is to elect board members who agree with them and replace the dam in question no matter what the cost. That goes to my last point because I know I'm running out of time. And that is, although not relied upon by the trial court or ruled on, Your Honors, but it relates to the other issues I think intricately, I submitted in motion and in my brief, this case I don't believe is ripe for adjudication. It lacks ripeness just because of the very things we talked about, the very things that could not be done and weren't done. There was no result. There was no obtainable result. These plaintiffs simply want you to recognize an absolute duty, no matter what, no matter what the cost, no matter what the process, of directors of this company to replace that dam. That is not how anything can work. The business judgment rule protects these people. They did reasonable things in light of their duties. There is no evidence of a breach of fiduciary duty by anyone. I think that's actually confirmed in the deposition testimonies of the plaintiffs as well. It was always, well, they were on the board and the board didn't repair it. That's the symbol and core of their case, which is unsupportable under Illinois law. I'm finished if you have no questions. Just out of curiosity, can you tell me, is it an annual fee that the lot owners pay? My understanding is it's on the basis of actual expense. There are assessments issued by the board to the membership based on whatever cost might have been incurred that's necessary to cover for the operation of the company. The company is the sole owner of the land in question, which is also why it's not a CIC, I might add. Those assessments have been ongoing since 1975. Is that correct? Or maybe I have the wrong year? I'm sure that there were assessments going far back. I don't think that the financial documents are necessarily in evidence as to that part. So were the assessments used to repair the dam in the past? I don't know that definite year on it, but I would assume that from time to time, if there had to be some maintenance done, yes, I would assume that that would be the case. The assessments were for that purpose as well as real estate taxes and insurance. So they weren't limited to real estate taxes and insurance, but were related to maintenance of an asset? My understanding, and I think it's correct and someone might correct me, is that this corporation maintained the lake, owned the property, maintained the dam, owned the property. They did not maintain a lake. They maintained a dam. And if it was related to the dam and an expense was incurred, that would be an assessable item to the membership. I believe that that's correct. I just don't have details going that far back to be able to verify for you. You've helped me a little. Thank you. Thank you. Thank you, Your Honor. To address the Court's last question, the answer is yes. There have been expenditures and assessments for the purpose of repairing the dam in the past. It's deteriorated from time to time, and the association has assessed homeowners to fix it. Had it deteriorated to such a point that that is why it washed out? Presumably. I mean, at some point it washed out. In 2007, after that great storm, it washed out. But a lot of dams didn't wash out after that great storm. True, true, true. But the answer to the question is yes, there have in the past. All right. Thank you. Other things that this association has done are very clearly indicative of their status as an association. They've sued homeowners to collect assessments. That's in their power. Mr. Goebbeler listed a whole list of things that they can't do. Well, they have. And Mr. Goebbeler was the attorney that sued our clients for the payment of assessments, even though they weren't doing their job as an association. They've entered into the courts of this county and sued to enforce the covenants. They had that power, and they exercised it, the board of directors. To suggest that they didn't have that power certainly flies in the face of what they've done. Do those lawsuits constitute judicial admissions, then? I don't know the answer to that question, Your Honor. But certainly there are court orders identifying this as a homeowners association, and there are complaints which- Are the lawsuits identifying them as a homeowners association for purposes of litigation? I don't want to quote a complaint that I haven't recently read, but I know they've sued to enforce the covenants in their role as an association. Also sort of glossed over, and I think it's well set forth in the brief, but annual reports have been filed for this company as long as it's been in existence. In 85, the Not-For-Profit Act required companies to identify themselves as either a condo, a co-op, or a homeowners association administering a common interest community. They did that for about 20 years. Mid-litigation here, they stopped doing that. They said, oh, no, we're not one of those. They're not checked about swarms. They're sworn statements about what the status of this organization is. That's what an annual report is. To say that, oh, we didn't need to do that, never mind, we're not one of those, is entirely disingenuous. I tried to emphasize that in the brief. I think it's something the court needs to pay close attention to. Also, the legal opinion. I don't know what the practice of most attorneys is, but to fill out a form and say that's my legal opinion, that to me is also disingenuous. There was an opinion that said this organization has a duty and the right to repair this dam in the context of a loan application for that purpose, and that legal opinion was apparently not followed by the existing members, the defendants in this case. We allege that this breach of duty is ongoing. The trial court never even addressed whether there is a duty to repair the dam. It just denied or entered some re-judgment account, too. The trial court totally ignored the statutory definition that fits this organization precisely. Unit owners are members of the corporation. The real estate is governed by the provisions of the declaration. The association has an obligation to maintain property, pay insurance, pay taxes, and they have the right and authority to assess for that purpose. That's the definition of a common interest duty association. There's no magic act or ceremony that has to happen before it's declared to be that, and the point of the act that first defines it is that whatever you're calling yourself, if you fit this definition, you can use this section of the Forcible Entry and Detainer Act. So it's not a set of things that have to happen. If you fit it, you are it. If it looks like this, it is this, and this organization has acted like it all the way through its existence until very recently when they realized that that might have some special legal significance and impose some special duties on them. Can you briefly touch on the rapeness issue? I'm sorry? The rapeness issue. I think the argument is that the idea that there is a prohibition against changing the dam eliminates a controversy. The controversy existed from the moment the dam washed away, and we made a demand on this association to bring it back or to do its duty to assess to repair it. And when the suit was filed, the demand had been issued. It had expired. Nothing happened, and so thereby a controversy was created. That controversy exists until this association does what it's supposed to do. What if the Department of Natural Resources says you can't construct this dam? The Department of Natural Resources was involved in this case initially with regard to telling the association that we are aware of the condition of this dam. We are going to require you either to remove it and dewater the lake and do all of the engineering that goes along with that or reconstruct it in conformity with the standards that the DNR requires, the class levels of the dams. My honest understanding is that they haven't done anything, mostly because of a lack of resources to do a lot of enforcement on these things, but that's how DNR was first involved. Our demand said, hey, DNR has told us we have to do certain things here, so let's get in gear and do it. If you don't, we think you're liable for the lack of action. We did ask the court for an injunction initially so that we wouldn't completely remove it and require it to be constructed in potentially a more costly fashion, but that doesn't prevent the acts of preparation to do it. And it also, just to address, I don't want to run too far afield from your question, I hope I've answered it, but Mr. Devler suggested that perhaps the court has to make all these different determinations about cost. All the court has to do really is say there's a duty and fulfill your duty. I have to know what the cost is going to be. I have to order the association to vote on it.  And so I want to answer that question. If there aren't any other questions, please. Thank you. Thank you all for your evidence today. We appreciate your coming and helping us on this issue. We voted on this matter. I'm advising that the statute is written. And now we'll do the luncheon.